348 So.2d 23 (1977)
TAMARAC VILLAGE, INC., Appellant,
v.
BATES & DALY CO., a Florida Corporation, Appellee.
No. 75-1796.
District Court of Appeal of Florida, Fourth District.
June 17, 1977.
Rehearing Denied August 4, 1977.
*24 Herbert Buchwald, Miami Beach, for appellant.
Philip M. Warren, Pompano Beach, for appellee.
DOWNEY, Judge.
We have for review a final summary judgment for appellee, Bates & Daly Co., foreclosing its mechanic's lien against appellant, Tamarac Village, Inc., the owner of the real property in question.
The primary issue on appeal is whether the owner may claim as proper payments a) certain payments it made to the general contractor before the owner recorded a notice of commencement and before appellee began to furnish any labor and material under appellee's subcontract, and b) payments it made to complete the construction without recording a notice of recommencement after the general contractor had abandoned the construction project.
The following is the pertinent chronology of events:
a) On August 27, 1973, Tamarac, as owner, contracted with a general contractor to improve its property;
b) between September 10, 1973, and October 12, 1973, Tamarac paid the contractor a total of $15,315.08;
c) on October 16, 1973, Tamarac recorded its Notice of Commencement;
d) between October 26, 1973, and November 1, 1973, Bates furnished labor and materials to the improvement to the extent of $1,762.52;
e) on November 23, 1973, the general contractor abandoned the job;
f) on November 30, 1973, Bates served notice to owner upon Tamarac;
g) on December 3, 1973, Bates recorded its claim of lien.
After the general contractor abandoned the contract, Tamarac had the construction completed at a cost of $64,963.36. Tamarac paid $100,226.56 toward the improvement, or $20,501.56 in excess of the adjusted contract price of $79,725.00.
Several of the critical events which must be kept in mind are:
1) Tamarac paid $15,315.08 to the general contractor prior to recording its notice of commencement;
2) Bates served its notice of intention to claim a lien pursuant to Section 713.06(2)(a) within 45 days of the time it commenced its work but 7 days after the general contractor abandoned the contract;
3) Tamarac had the construction completed, but it did not record a notice of recommencement as required by Section 713.07(4), Florida Statutes (1973).
The circuit court entered summary judgment in which it found that:
"counsel for each of the parties having agreed that there is no genuine issue of material fact, and that therefore the Court can and should now decide this cause as a matter of law, the Court finds that there was a failure on the part of the Defendant-Owner to timely file a Notice of Commencement, prior to the Owner making some payment under the contract, and the Court further finding that there was a failure on the part of Defendant-Owner to file a Notice of Re-Commencement, therefore, a surplus of funds has been created from which the Plaintiff is entitled to recover on its lien in the amount of $1,762.52."
The court thereupon adjudged that Bates was entitled to have Tamarac's property sold to satisfy Bates's lien claim (plus interest, costs, and attorney's fees).
On appeal, Tamarac contends that: (a) since Bates did not commence work until after Tamarac had paid the general contractor $15,315.08, those payments were not improper, even though they were made before Tamarac recorded its notice of commencement; (b) even if the $15,315.08 payments were improper, Bates still cannot recover because the reasonable cost of completion exceeded the contract price and therefore there was no surplus fund to satisfy Bates's claim of lien; and (c) since Bates, contrary to the requirements of Section 713.06(2)(a), did not serve its Notice to Owner before the general contractor abandoned *25 the job, the lien is unenforceable. We disagree with all of Tamarac's contentions.
If an owner fulfills all the duties the Mechanics' Lien Law places upon him, his liability for all mechanics' lien claims cannot exceed the contract price.[1] See Alton Towers, Inc. v. Coplan Pipe & Supply Co., 262 So.2d 671 (Fla. 1972), and Section 713.06(1), Florida Statutes (1973). However, if the owner makes improper payments, then he has failed to comply with the Mechanics' Lien Law, and his liability for mechanics' lien claims may exceed the contract price. See, e.g., Renuart Lumber Yards v. Stearn, 95 So.2d 517 (Fla. 1957).
We hold that the payments Tamarac made before it recorded its notice of commencement were improper payments under Section 713.06(3)(a), Florida Statutes (1973). In addition, we hold that Tamarac's failure to file a notice of re-commencement as required by Section 713.07(2), Florida Statutes (1973), rendered the payments Tamarac made to complete the project also improper payments. See Melnick v. Reynolds Metals Company, 230 So.2d 490 (Fla. 4th DCA 1970), and Bill Ader, Inc. v. Maule Industries, Inc., 230 So.2d 182 (Fla. 4th DCA 1969). Thus, Tamarac could not deduct the pre-notice of commencement payments of $15,315.08, nor the reasonable cost of completion, from the adjusted contract price. Accordingly, there remained in Tamarac's hands improperly paid portions of the adjusted contract price sufficient to satisfy appellee's lien.
For the foregoing reasons the judgment appealed from is affirmed.
AFFIRMED.
ALDERMAN, J., and DURANT, N. JOSEPH, Jr., Associate Judge, concur.
NOTES
[1] See Section 713.01(3), Florida Statutes (1973) for the definition of "contract price".